# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ADAM STEELE | ) | | |
| | ) | | |
|     Plaintiff | ) | | |
| v. | ) | CIVIL ACTION | |
| | ) | FILE NO._____ | |
| | ) | | |
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
|     Defendant. | ) | | |

## COMPLAINT

## INTRODUCTORY STATEMENT

COME NOW Plaintiff and files this complaint against Defendant, UNITED STATES OF AMERICA, to cause the Internal Revenue Service ("IRS") to cease requiring Plaintiff to renew his preparer tax identification number ("PTIN") or, in the alternative, to cease asking more information than is necessary to renew a PTIN. The objective of this case is to require the IRS to follow statutory law.

### 1.

Plaintiff prepares tax returns for others for compensation and has done so for decades. He renewed his PTIN for 2021, 2022 and 2023, and for many prior years.

### 2.

Plaintiff seeks elimination of the requirement he renew his PTIN. In the alternative, he seeks reduction in the information he must supply to the IRS incident

to PTIN renewal to information required to renew (given he already has a PTIN), with such information to include only name, Social Security number, PTIN, date of birth, address and phone number and/or email address. Plaintiff also asks the Court to issue an injunction prohibiting Treasury from requiring Plaintiff to renew his PTIN or, in the alternative, asking more information than is necessary to issue or renew a PTIN.

## JURISDICTION AND VENUE

### 3.

This Court has subject matter jurisdiction of this action under 28 U.S.C § 1331, 5 U.S.C. § 702 and 5 U.S.C § 706.  Alternatively, this Court has subject matter jurisdiction under 28 U.S.C. § 1346.

### 4.

Requiring renewal of PTINs is an act beyond pertinent statutory authority (26 U.S.C. § 6109). The licensing questions asked on IRS Form W-12 exceed the ambit of questions permissible under 26 U.S.C. § 6109(c), causing the action of the IRS in asking such questions on Form W-12 to exceed statutory authority. An action is permissible under 5 U.S.C. § 706(2)(A) and (C).

### 5.

This action is for declaratory and equitable relief. 28 U.S.C. § 2201 *et seq.* authorizes equitable relief being sought.  The Secretary of the Treasury, Janet Yellen is personally responsible for compliance.

6.

This Court has jurisdiction over all parties to this lawsuit, and venue is appropriate in this District pursuant to 28 U.S.C. § 1391.  As to venue, in *Stafford v. Briggs*, 444 U.S. 527, 544 (1980), the U.S. Supreme Court stated: "Without doubt, under § 1391(e), venue lies in every one of the 95 federal districts . . ."

## THE PARTIES

7.

Named Plaintiff Adam Steele resides in Bemidji, Minnesota.

8.

Adam Steele is a certified public accountant (CPA) licensed by the State of Minnesota.  He has been a Minnesota CPA since 1998.

9.

Adam Steele regularly prepares, and has, for many years, prepared tax returns for compensation.

10.

The Defendant is the United States Government, which includes the Department of the Treasury ("Treasury"), of which the IRS is substantively a subset.

## PERTINENT FACTS

11.

Prior to 2011, Plaintiff, as a tax return preparer, had to include his Social Security number or a PTIN to identify himself to the IRS on returns prepared for compensation.

12.

After 2010, the **IRS** required tax return preparers to use a **PTIN** to identify themselves to the **IRS** on income tax returns prepared for compensation.

13.

For 2021, 2022 and 2023, Plaintiff has filed Form W-12 (either manually or online) to renew his **PTIN** and paid **PTIN** renewal fees.  He did the same for many prior years as well.

14.

As noted below, in 2010 and 2011, in implementing the plan set forth in **IRS** Publication 4832 except for requiring **PTIN** renewal annually instead of every three years, the **IRS** created a licensing scheme with respect to tax return preparers. Requiring return preparers to acquire and renew a **PTIN** was part thereof.

15.

The licensing scheme relied on 31 U.S.C. § 330 for legal authority.

16.

Incident to the licensing scheme, a **PTIN**, which had previously been an alternative identification number (to a Social Security number) that could be obtained for free and did not need to be renewed (because it did not change), substantively became a license that had to be annually renewed.

17.

Although the licensing scheme was later found by the District of Columbia district court and the **D.C.** Court of Appeals to be unlawful because 31 U.S.C. § 330

does not apply to tax return preparation, Defendant continued to perform the majority of the licensing activities while reducing licensing (PTIN) fees.

18.

Although licensing power does not exist and was determined by the D.C. Court of Appeals not to exist in 2014, the IRS has required tax return preparers to annually acquire or renew a PTIN, and the renewal form (that has changed over the years) continues to include numerous licensing-type questions.

19.

The IRS has statutory authority to require a tax return preparer, including Plaintiff, to acquire a PTIN and supply information necessary for the IRS to issue a PTIN. Plaintiff did so more than a decade ago.


## IRS/TREASURY ACTIONS IN ISSUE

20.

In January 2010, the IRS issued IRS Publication 4832, "Report Preparer Review (Rev. 12-2009)" [hereinafter "Publication 4832]. This document, which is not law, proposed certain actions be taken to regulate the tax return preparation industry.

21.

No recently enacted legislation led to preparation and issuance of Publication 4832. Instead, this publication is purely an IRS-generated product. No law has been enacted since issuance of Publication 4832 that would permit Treasury or any federal agency to prohibit anyone from preparing tax returns for compensation.

22.

Publication 4832 recommended the tax return preparation industry be regulated in a particular manner, including IRS testing of certain preparers to determine eligibility to be able to prepare returns for others for compensation and annual continuing professional education requirements for those persons who passed the IRS's test.

23.

Publication 4832 recommended that, to aid the IRS, individuals who prepare tax returns be required to acquire a Treasury-provided PTIN and be charged upon issuance and every three years thereafter for the PTIN.

24.

On March 26, 2010, the IRS issued "Notice of Proposed Rulemaking, *Furnishing Identifying Number of Tax Return Preparer*," 75 Fed. Reg. 14539 [hereinafter "Proposed Regulations"].  The Proposed Regulations would, if adopted, require individuals who prepare tax returns to acquire and annually renew a PTIN.

25.

The preamble to the Proposed Regulations states: "The Report [i.e., Publication 4832] recommended, in part, that tax return preparers be required to obtain and use a PTIN as the exclusive preparer identifying number and undergo a tax-compliance check. As discussed below, the proposed regulations implement those recommendations."

26.

On September 30, 2010, the IRS issued "Final Regulations, *Furnishing Identifying Number of Tax Return Preparer*," 75 Fed. Reg. 60309 [hereinafter "Final Regulations"], requiring individuals who prepare tax returns to acquire and potentially renew a PTIN. Separate regulations established user fees to be paid with respect to PTIN issuance and renewal.

27.

Under IRS's implementation of the Final Regulations, PTINs expire annually and must be renewed each year.

28.

As part of the initiative arising out of Publication 4832, the IRS also published proposed regulations amending the "Treasury Department Circular 230" rules governing representatives before the Internal Revenue Service to, for the first time ever, include tax return preparation in the list of regulated activities. "Notice of Proposed Rulemaking, *Regulations Governing Practice Before the Internal Revenue Service*," 75 Fed. Reg. 51713 (Aug. 23, 2010) [hereinafter "Proposed Circular 230 Regulations"]. The Proposed Circular 230 Regulations required that certain persons take a test, pass the test, acquire a PTIN and take certain continuing education courses in order to be permitted to prepare tax returns for compensation.

29.

The preamble to the Proposed Circular 230 Regulations states: "This document proposes amendments to Circular 230 based upon certain of the recommendations in the Report [i.e., Publication 4832]."

30.

On June 3, 2011, the above-described portions of the Proposed Circular 230 Regulations (i.e., testing, continuing education and PTINs) were issued as final regulations. "Final Regulations, *Regulations Governing Practice Before the Internal Revenue Service*" 76 Fed. Reg. 32286 (June 30, 2011) [hereinafter "Final Circular 230 Regulations"].

31.

Substantial portions of the Final Circular 230 Regulations, including the testing and continuing education requirements, were struck down as unlawful in *Loving v. Internal Revenue Service*, 917 F. Supp. 2d 67 (D.D.C. 2013), *aff'd* 742 F.3d 1014 (D.C. Cir. 2014). Among other things, *Loving* held that tax return preparation is not subject to regulation under 31 U.S.C. § 330 because preparing a tax return is not representing a person before Treasury.

32.

Absent 31 U.S.C. 330, the only relevant statutory authority remaining under the various regulations cited above is 26 U.S.C. § 6109.

33.

26 U.S.C. 26 U.S.C. § 6109(a)(4) is the pertinent statutory authority relating to PTINs.

34.

In pertinent part, 26 U.S.C. § 6109(a)(4) provides: "Any return or claim for refund prepared by a tax return preparer shall bear such identifying number for

securing proper identification of such preparer, his employer, or both, as may be prescribed."

35.

Other than 26 U.S.C. § 6109(a)(4), the only other pertinent statutory authority with respect to PTINs issuance or form is 26 U.S.C. § 6109(c).

36.

26 U.S.C. § 6109(c) provides: "For purposes of this section, the Secretary is authorized to require such information as may be necessary to assign an identifying number to any person."

37.

A PTIN is meant to be a permanent identification number.

38.

Absent unusual circumstances, following issuance, a PTIN does not change.

39.

A PTIN starts with a P, and then is followed by eight numbers. A Social Security number is a nine-digit number.

40.

Following issuance, no action is necessary for the PTIN to retain its form (i.e., the letter P and eight numbers in the PTIN).

41.

The IRS could cease requiring PTIN renewal, but it has not done so.

42.

The legislative history of 26 U.S.C. § 6109(a)(4) provides that the PTIN requirement was created to ". . . enable the IRS to identify all returns prepared by an specific individual in cases where the IRS has discovered some returns improperly prepared by that individual."

43.

26 CFR §301.6109-1(a)(ii) provides: "Uses.  Social Security numbers, IRS individual taxpayer identification numbers and IRS adoption taxpayer identification numbers are used to identify persons."

44.

For an individual with a Social Security number (SSN) or a Taxpayer Identification Number (TIN) and an address, the only information that is absolutely necessary to identify the person and issue a PTIN is his or her name, SSN or TIN, and address.

45.

Under 26 U.S.C. §6109(d), absent a Treasury regulation requiring a different identifying number, an individual's SSN is his identifying number for purposes of the requirements of 26 U.S.C. §6109, including the PTIN requirement of 26 U.S.C. §6109(a)(4).

46.

For Treasury identification purposes, a person's PTIN is based on his SSN. Each individual's SSN is unique (i.e., no two individuals in the federal tax system

have the same SSN or TIN). Absent very unusual circumstances, an individual's SSN does not change.

47.

The form used by the IRS to issue PTINs before the licensing regime was created in 2010 and 2011 was Form W-7P.

48.

PTINs became possible via a statutory change made in 1998.

49.

Form W-7P changed over the 1998-2010 years of applicability, but it did not ever require more information than name, SSN, date of birth, address, and phone number.

50.

The information received by the IRS on completed Form W-7P was sufficient to enable the IRS to issue a PTIN.

51.

In pertinent part, 26 U.S.C. § 6109(c) has not changed since 1998.

52.

The maximum information necessary for the IRS to issue a PTIN is name, Social Security number, address, date of birth and phone number and/or email address.

53.

Since 2010, **IRS** Form **W-12** must be completed to acquire a **PTIN** and to renew a **PTIN** for each year after initial issuance.

54.

Since 2010, Form **W-12** has periodically changed, with the last version created in October 2022. Licensing-type questions have been included on each version of Form **W-12**.

55.

The following questions are included in the October 2022 Form **W-12**:  name and **PTIN** (if already issued), year of application or renewal, Social Security number, mailing address, birth date, personal mailing address and phone number, business mailing address and phone number, business identification, email address, past felony convictions with potential explanation, address of last income tax return filed, filing status and tax year for last individual income tax return filed, federal tax compliance status with potential explanation, data security acknowledgement, and professional credentials.

56.

The main income tax returns prepared by tax return preparers (i.e., 1040, 1041, 1065, 1120 and 1120S) and related simple forms require the tax return preparer to include the following information: Name, signature, date of signature, **PTIN**, self-employed status, firm name, firm address, phone number and firm EIN.

57.

The questions on the October 2022 Form W-12 beyond the questions asked on Form W-7P (noted above) are licensing–type questions, related to a licensing system that was struck down as unlawful by *Loving v. Internal Revenue Service*, 917 F. Supp. 2d 67 (D.D.C. 2013), *aff'd* 742 F.3d 1014 (D.C. Cir. 2014).

## ONGOING INJURIES TO PLAINTIFF

58.

In order to annually renew his PTIN, Plaintiff has been annually required to provide answers to invasive and unnecessary licensing-type questions on Form W-12 since 2010. Since all Form W-12s issued since 2010 have included licensing-type questions, Plaintiff believes absent action to stop the IRS from continuing to ask licensing-type questions, it will continue to ask such questions in the future and he will be required to answer them to renew his PTIN.

59.

The pertinent statutory provision, 26 U.S.C. § 6109(a)(4), does not authorize the IRS or anyone to require Plaintiff (or anyone) to renew his PTIN.

60.

Plaintiff has not only been required to make annual filings and annually provide answers to invasive and unnecessary licensing-type questions, but he has been required to waste his personal time to do so. According to page 4 of the instructions to the October 2022 version of Form W-12, the time needed to

complete Form W-12 includes one hour of recordkeeping, nine minutes to learn about the law or the form, and four minutes to prepare and send the form.

## CASE LAW RELATING TO AGENCY POWERS

### 61.

*Loving v. Internal Revenue Service*, 917 F. Supp. 2d 67 (D.D.C. 2013), *aff'd* 742 F.3d 1014 (D.C. Cir. 2014) held that tax return preparation is not subject to regulation under 31 U.S.C. § 330 because preparing a tax return is not representing a person before Treasury.

### 62.

U.S. Supreme Court cases hold an agency must draw its powers from a statutory grant of authority from Congress. *City of Arlington v. FCC*, 569 U.S. 290 (2013); *FDA v. Brown & Williamson Tobacco*, 529 U.S. 120, 124 (2000).

## CAUSE OF ACTION – THE IRS'S *ULTRA VIRES* AND UNLAWFUL ACTS

### 63.

The pertinent PTIN statute, 26 U.S.C. § 6109, does not permit Treasury or the IRS (or anyone) to require Plaintiff or anyone to renew a PTIN. Making Plaintiff or anyone renew a PTIN is an *ultra vires* act.

### 64.

26 U.S.C. § 6109 does not allow the IRS or anyone to ask licensing-type questions (but rather only questions necessary to identify), so the current Form W-12 is unlawful as an *ultra vires* act.

65.

Past versions of Form W-12 have also included licensing-type questions, so absent something to cause cessation of licensing-type questions, Plaintiff anticipates the IRS will continue asking of such questions on the PTIN renewal form. Lawfully, such questions must cease because asking them is an *ultra vires* act.

66.

Plaintiff is entitled to declaratory and injunctive relief prohibiting Treasury and the IRS from requiring Plaintiff to renew his PTIN or, alternatively, provide information beyond that necessary to identify him to renew his PTIN. Unless Treasury and the IRS are enjoined from continuing to ask such questions, Plaintiff will continue to suffer ongoing injuries.

## REQUESTED RELIEF

WHEREFORE, the Plaintiff prays for the following relief against the Defendant:

1.    A declaratory judgment by the Court that Treasury and the IRS lack statutory authority to require Plaintiff to renew his PTIN.

2.    Should the Court not issue a declaratory judgment that Treasury and the IRS lack statutory authority to require Plaintiff to renew his PTIN, a declaratory judgment by the Court that Treasury and the IRS lack statutory authority to require more information than name, SSN, date of birth, address and phone number and/or email address to renew a PTIN, and that all other information requests should cease (and not be asked by any agency on any other form, etc.).

3.     A permanent injunction prohibiting Treasury and the IRS from requiring Plaintiff to renew his PTIN.

4.     Should the Court not issue a permanent injunction prohibiting Treasury and the IRS from requiring Plaintiff to renew his PTIN, a permanent injunction prohibiting the Treasury Department, the IRS or any agency or department thereof from requiring Plaintiff to divulge more information than name, SSN, date of birth, address and phone number and/or email address to renew a PTIN, and prohibiting the Treasury Department, the IRS or any agency from asking licensing questions on any form, etc. absent specific statutory authority to do so;

5.     An award to Plaintiff the costs of litigation, legal fees and other penalties allowed by law, including reasonable compensation to Plaintiff for his time and effort, and reasonable compensation to counsel for Plaintiff under the Equal Access to Justice Act for undertaking the action; and

6.     An award to Plaintiff all further relief that it deems just and proper.

Respectfully submitted,

*/s/Allen Buckley*
Allen Buckley
DC Bar Number GA0042
Allen Buckley LLC
Suite 750, Building One
2727 Paces Ferry Road
Atlanta, GA 30339
(404) 610-1936
ab@allenbuckleylaw.com