# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ADAM STEELE**, *et al.*, | |
| *Plaintiffs,* | |
| **v.** | Case No. 1:23-cv-918-RCL |
| **UNITED STATES OF AMERICA**, | |
| *Defendant.* | |

## <u>MEMORANDUM OPINION</u>

Aggrieved by the class counsel's litigation strategy and unsatisfied with this Court's rulings, a plaintiffs' attorney in a class action has decided to start over by spinning off a new suit with the same plaintiffs, the same defendant, and the same issues. Before the Court is the government's Motion to Dismiss. MTD, ECF No. 12. Since plaintiffs' splinter suit violates the rule against claims-splitting, the Court will **GRANT** the government's motion and dismiss this case in its entirety. Also before the Court is plaintiffs' Motion to File a Sur-Reply Brief, ECF No. 20, which the Court will **GRANT**.

## I.   BACKGROUND

### A.  *Steele I*

This case—*Steele II*—must be understood in the context of *Steele v. United States*, No. 1:14-cv-1523 (RCL), which the Court will refer to as *Steele I*. Both this Court and the D.C. Circuit have already explained in some detail the statutory and regulatory background to *Steele I* and its procedural history. *See Steele v. United States*, No. 1:14-cv-1523 (RCL), 2023 WL 6215790, at *1–2 (D.D.C. Sept. 25, 2023); *Steele v. United States*, 657 F. Supp. 3d 23, 28–34 (D.D.C. 2023); *Steele v. United States*, No. 1:14-cv-1523 (RCL), 2020 WL 7123100, at *1–2 (D.D.C. Dec. 4, 2020); *Montrois v. United States*, 916 F.3d 1056, 1058–61 (D.C. Cir. 2019); *Steele v. United*

*States*, 260 F. Supp. 3d 52, 56–60 (D.D.C. 2017).  For that reason, the Court will summarize only the background information necessary to resolve the present motions.

### 1. Regulatory and Statutory Framework

As the Court previously explained, *Steele*, 657 F. Supp. 3d at 28–34, the Internal Revenue Code defines a "tax return preparer" as "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of" or "claim for refund of" federal income taxes.  26 U.S.C. § 7701(a)(36)(A).  While the Code does not set professional standards or licensing requirements for return preparers, Congress enacted a statute in 1976 authorizing the IRS to require them to list their Social Security numbers for identification purposes on returns they prepared.  *See* Tax Reform Act of 1976, Pub. L. No. 94-455, § 1203(d), 90 Stat. 1520, 1691.

In 1998, Congress amended that statute to authorize the IRS to permit return preparers to list a separate identification number issued by the agency instead of a Social Security number.  26 U.S.C. § 6109(a), (d).  The IRS promulgated an implementing regulation the following year creating the Preparer Tax Identification Number (PTIN) program and allowing, but not requiring, return preparers to list the PTINs it issued in lieu of a Social Security number on returns. Furnishing Identifying Number of Income Tax Return Preparer, 64 Fed. Reg. 43,910 (Aug. 12, 1999) (codified at 26 C.F.R. pt. 1).

In 2010 and 2011, the IRS issued a series of regulations expanding its reach over return preparers.  As a part of that effort, the IRS expanded the PTIN program, retooled it as a broader information-gathering system as to preparers, made obtaining and renewing PTINs mandatory for preparers, and began charging a fee to obtain and renew a PTIN.  *See* Furnishing Identifying Number of Tax Return Preparer, 75 Fed. Reg. 60,309–10 (Sept. 30, 2010); User Fees Relating to

Enrollment and Preparer Tax Identification Numbers, 75 Fed. Reg. 60,316, 60,319 (Sept. 30, 2010).  To support the expanded program, the IRS organized a new Return Preparer Office (RPO) with multiple departments.

The regulations also authorized the IRS to prescribe the manner for issuing and renewing a PTIN.  *See* 26 C.F.R. 1.6109-2(d)–(e).  To that end, since 2010 the IRS has required those seeking to obtain or renew a PTIN to complete IRS Form W-12.  *See* Amend. Compl. ¶ 57; MTD 8.  Form W-12 includes requests for name, Social Security number, date of birth, and contact information, as well as further information, such as whether the preparer is current on his or her own federal taxes and has any past felony convictions.  *See* MTD, Exs. 3–16.

After the IRS implemented its new return preparer regulations, a group of return preparers sued the IRS, arguing that its new preparer credentialing process was unlawful because the statute that the agency used to justify it did not reach return preparers.  *See Loving v. IRS*, 742 F.3d 1013, 1015–16 (D.C. Cir. 2014).  The district court granted summary judgment to the plaintiffs, invalidating the credentialing requirement, and the Circuit affirmed.  *Id.* at 1021–22.  *Loving* thus invalidated many of the RPO activities that had been funded by fees charged for issuing or renewing a PTIN.  But *Loving* left undisturbed the regulations requiring all return preparers to obtain and renew PTINs and to pay a fee and provide information to do so.

### 2.  Procedural History of *Steele I*

#### (i)  Pre-Montrois *Procedural History*

In the wake of *Loving*, plaintiffs Adam Steele and Brittany Montrois, on behalf of a putative class of tax-return preparers, filed an action in this Court against the United States challenging the IRS's requiring PTIN issuance and renewal, requesting unnecessary information to issue and renew a PTIN, and imposing a fee on the issuance and renewal of PTINs.  *See* Compl., ECF No.

1, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. Sept. 8, 2014) ("*Steele I* Compl.").

Mr. Steele and Ms. Montrois were represented by attorney Allen Buckley, who had been involved

in previous litigation concerning the IRS's regulation of tax-return preparers.  Mem. & Op. 2–3,

ECF No. 37,   *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. June 30, 2015).   Mr.

Buckley reached an agreement with the law firm Motley Rice LLC for it to also serve as counsel

in the case, and the Court later appointed Motley Rice LLC interim class counsel.  *Id.* at 9.

Especially relevant to this case are plaintiffs' initial challenges to the IRS's authority to

require PTIN renewal and to request allegedly unnecessary information before issuing or renewing

a PTIN.  According to the original complaint, "[s]ince there is no lawful basis for requiring renewal

of a PTIN, charging user fees for renewal of a PTIN is unlawful" and "[s]ince all that is necessary

to issue a PTIN is name, SSN (or TIN) and address, requiring tax return preparers to provide any

additional information is unlawful."  *Id.* ¶¶ 98–99.  Among other relief, the plaintiffs sought a

declaratory judgment that "all renewal requirements should cease," *id.*, Requested Relief, Count

2, and an injunction prohibiting the IRS "from asking more information than is necessary to issue

a PTIN," *id.*, Requested Relief, Count 12.

 On August 7, 2015, the plaintiffs amended their complaint.  They dropped the allegations

and requests for relief concerning the requirement of PTIN renewal.  *Steele I* 1st Amend. Compl.,

ECF No. 41, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. Aug. 7, 2015); *see also*

*Steele*, 2020 WL 7123100, at *5 (observing that when plaintiffs amended their complaint, they

omitted their challenge to the PTIN renewal requirement).  Mr. Buckley later acknowledged that

"the choice to omit that claim from the amended complaint was an intentional decision made by

Class Counsel over his objection." *Id.* at *6.  The complaint also deleted its allegation that the IRS

was unlawfully requiring tax-return preparers to provide unnecessary information beyond name,

Social Security number, and address, although it did request "[a] judgment declaring that the IRS may only request information from tax return preparers that is authorized by statute." *Steele I* 1st Amend. Compl., Prayer for Relief, No. 5.

On August 8, 2016, the Court certified a class under Federal Rule of Civil Procedure 23 and appointed Motley Rice LLC as class counsel. *See* Order, ECF No. 63, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. Aug. 8, 2016). The class comprised "[a]ll individuals and entities who have paid an initial and/or renewal fee for a PTIN, excluding Allen Buckley, Allen Buckley LLC, and Christopher Rizek." *Id.*

The parties later cross-moved for summary judgment and on June 1, 2017, this Court granted in part and denied in part both parties' summary judgment motions. *Steele*, 260 F. Supp. 3d at 67–68. The Court first held that the Internal Revenue Code authorized the IRS to require the use of PTINs, although it did not address the renewal requirement. *Id.* at 62–63. But the Court sided with plaintiffs to hold that under the Independent Offices Appropriations Act, the IRS lacked authority to *charge a fee* for PTINs. *Id.* at 63–67. The Court therefore issued a final judgment and permanent injunction forbidding the IRS from charging for issuing or renewing PTINs. Final J. & Permanent Inj., ECF No. 82, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. July 7, 2017).

Plaintiffs did not appeal, but the government did. In a March 1, 2019 decision, the D.C. Circuit determined that the IRS has authority to charge tax-return preparers a fee for obtaining and renewing a PTIN. *Montrois*, 916 F.3d at 1062–66. The Circuit vacated the judgment of the Court and remanded the matter for further proceedings, "including an assessment of whether the amount of the PTIN fee unreasonably exceeds the costs to the IRS to issue and maintain PTINs." *Id.* at 1058.

*(ii) Post-Remand Infighting Among Plaintiffs' Counsel*

On remand, this Court entered a new scheduling order and the parties commenced fact discovery on the reasonableness of the fees charged.   *Steele*, 657 F. Supp. 3d at 33.   "That is when infighting among plaintiffs' counsel threatened to derail the case" as "Mr. Buckley, co-counsel for plaintiffs, evidently could not reach an agreement to share control of the case with class counsel Motley Rice LLC."   *Id.*   Mr. Buckley moved to be appointed sole lead class counsel.   Mot. to be Named Sole Lead Class Counsel, ECF No. 118, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. Jan. 23, 2020).   Recounting a "long history," Mr. Buckley accused Motley Rice LLC's attorneys of breach of trust, dilatory conduct, and failure to defer to his superior views, as well lacking Mr. Buckley's own "passion and abilities."   *See* Reply in Support of Mot. of Allen Buckley LLC to Be Named Sole Lead Class Counsel 12, ECF No. 121, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. Feb. 13, 2020).   The Court denied his motion as not in the best interest of the class.   Order, ECF No. 126, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. Apr. 27, 2020).   Undeterred, Mr. Buckley took on the mantle of "class-counsel-in-exile."   *Steele*, 657 F. Supp. 3d at 33.

Thus ensued internecine warfare: "Without the Court's assistance in wresting control of plaintiffs' case from his co-counsel, Mr. Buckley decided to go rogue.   He filed two motions, purportedly on behalf of the class, but against class counsel Motley Rice LLC's wishes."   *Id*.   One motion requested a preliminary injunction against requiring registered preparers to renew their PTINs.   *See* Prelim. Inj. Mot., ECF No. 128, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. Sept. 16, 2020).   The other motion was for leave to file an amended complaint.   The proposed complaint would include the "reinsertion" of the claim that the PTIN renewal requirement was unlawful.   *See* Mot. to Amend. Compl. 1, ECF No. 133, *Steele v. United States*,

No. 1:14-cv-1523 (RCL) (D.D.C. Sept. 30, 2020); *see also Steele I* Proposed 2d Amend. Compl. ¶ 50, Prayer for Relief ¶ 6, ECF No. 133-1, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. Sept. 30, 2020). The new complaint would also have added allegations that the PTIN fees charged after 2020 were excessive. *See Steele I* Proposed 2d Amend. Compl. In addition, it would have alleged that PTIN applications must require only name, Social Security number, date of birth, and current address. *See id.* ¶ 50. And it would have amended the prayer for relief's request for "[a] judgment declaring that the IRS may only request information from tax return preparers that is authorized by statute" by appending the phrase "to wit, name, Social Security Number, date of birth and address." *Compare  Steele I* Proposed 2d Amend. Compl., Prayer for Relief, ¶ 5, *with Steele I* 1st Amend. Compl., Prayer for Relief, ¶ 5.

Eventually, both factions of plaintiffs' counsel and the government reached a stipulation regarding the motion to amend. The government consented to changes concerning the post-2020 fee amounts, but did not consent to the changes concerning the renewal requirement or the information the IRS could request. Stipulation 2, 15, 17, ECF No. 139, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. Oct. 28, 2020). On December 4, 2020, the Court decided the two motions. *Steele*, 2020 WL 7123100, at *7.

The Court granted leave to amend the complaint with respect to "these consented-to allegations" about post-2020 fees. *Id.* at *4. But it denied leave to amend the complaint "to reintroduce a challenge to the PTIN renewal requirement" because these so-called "allegations" were added after undue delay and because adding them to the complaint would be futile as they were actually "naked legal conclusions." *Id*. at *4–6. The Court did not expressly address the unconsented-to proposed additions concerning what information the IRS could require, but these were omitted when, after the Court's decision, plaintiffs filed the Second Amended Complaint.

*See Steele I* 2d Amend. Compl., Prayer for Relief ¶ 5, ECF No. 148, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. Dec. 11, 2020).

As the Court denied plaintiffs' request to amend the complaint to reinsert allegations challenging the PTIN renewal requirement, the operative complaint—the *Steele I* Second Amended Complaint—contained no allegations about the legality of the renewal requirement, and the Court therefore denied the preliminary injunction motion. *Id.* at *6–7. The Court identified Mr. Buckley's effort to enjoin the IRS from requiring class members to renew their PTINs as "a transparent attempt to circumvent the D.C. Circuit's ruling in *Montrois* that the IRS can charge fees for PTIN renewals." *Id.* at *2; *see also* Prelim. Inj. Mot. 1 ("If return preparers are not required to renew their PTINs, they cannot be charged for such.").

### (iii) Post-Remand Summary Judgment

Next, the parties filed cross-motions for summary judgment concerning the excessiveness of the PTIN and vendor fees. The Court granted in part and denied in part each motion. The Court refused to "entertain plaintiffs' argument about the IRS's statutory authority to request additional information on PTIN applications" beyond name, address, phone number, Social Security number, and birth date because "an express claim that the IRS exceeds its statutory authority under the PTIN statute by requesting further information is nowhere to be found in that complaint." *Steele*, 657 F. Supp. 3d at 48. However, the Court held that the FY 2011 through FY 2017 PTIN and vendor fees were excessive as a matter of law because the IRS erred in determining whether the activities used to justify the PTIN and vendor fees were sufficiently related to the provision of PTINs to return preparers. *Id.* at 36–45. The Court remanded to the IRS to determine an appropriate refund for the class in a manner consistent with the IOAA. *Id.* at 50.

On January 22, 2024, the government filed a notice of the IRS's estimated refund.  *See* ECF No. 256, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. Jan. 22, 2024).  As plaintiffs wish to challenge the IRS's post-remand estimate, the Court ordered plaintiffs to file their challenge to the IRS' decision, which has not yet occurred.  *See* Mar. 4, 2024 Order, ECF No. 269, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. Mar. 4, 2024).  The Court has therefore not yet entered final judgment in *Steele I*.

### B.  *Steele II*

On April 4, 2023, Mr. Steele filed a new complaint against the United States.  Compl., ECF No. 1.  Mr. Buckley signed the complaint.  *See id.* at 16.  On May 17, the complaint was amended to add Krystal Comer, another tax return preparer, as a plaintiff.  *Steele II* Amend. Compl. ¶ 2. The plaintiffs sought the elimination of the IRS's PTIN renewal requirement or, in the alternative, "reduction in the information requested by the IRS incident to PTIN renewal to information required to renew (given they already have a PTIN), with such information to include only name, Social Security number, PTIN, date of birth, address and phone number and/or email address."  *Id.* ¶ 3.

The government moved to dismiss the Amended Complaint.  *See* MTD.  It argued that plaintiffs' challenge to the questions included on Form W-12 should be dismissed because the Paperwork Reduction Act bars judicial review of that claim.  *Id.* 6.  It also moved to dismiss both claims as barred by res judicata and by the statute of limitations set forth in 28 U.S.C. § 2401.  *Id.* The government also argued, in a footnote, that plaintiffs lack standing.  *Id.* 6 n.5.  Plaintiffs filed a response, Pls.' Opp'n, ECF No. 15, and the government filed a reply, Reply, ECF No. 19. Plaintiffs also moved for leave to file a sur-reply, to which the government objected.  *See* Mot. to File Sur-Reply 1, ECF No. 20.  These motions are now ripe for review.

## II.    LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

A defendant in a civil action may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  If the Court lacks subject matter jurisdiction, it must dismiss the claim or action.  Fed. R. Civ. P. 12(h)(3). A court considering a motion to dismiss for lack of subject matter jurisdiction must take all the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020). "However, those factual allegations receive closer scrutiny than they do in the Rule 12(b)(6) context," and the court "may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim."  *Id.*

One situation in which a court lacks subject-matter jurisdiction is if a plaintiff lacks Article III standing.  *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  The plaintiff bears the burden of establishing standing by demonstrating (1) a concrete injury in fact that is (2) traceable to the complained-of conduct and (3) redressable by the relief sought.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

### B.  Federal Rule of Civil Procedure 12(b)(6)

A defendant in a civil action may also move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A court

evaluating a Rule 12(b)(6) "motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor." *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 40 (D.D.C. 2018).  However, "[a] court need not accept a plaintiff's legal conclusions as true, . . . nor must a court presume the veracity of legal conclusions that are couched as factual allegations." *Id.* (citation omitted).

### C.  Res Judicata

The common law doctrine of res judicata—also known as "claim preclusion"—provides that "a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006).  In assessing the first element, "courts in this circuit do not require literally identical claims for res judicata to apply; instead, there is an identity of the causes of action when the cases are based on the 'same nucleus of facts.'" *Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittman, LLP*, 574 F. Supp. 2d 143, 149 (D.D.C. 2008) (Lamberth, C.J.) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)), *aff'd*, 569 F.3d 485 (D.C. Cir. 2009).  "In pursuing this inquiry, the court will consider '"whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."'" *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004) (quoting *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 n.5 (D.C. Cir. 1983)).

Res judicata is designed to "preclude parties from contesting matters that they have had a full and fair opportunity to litigate." *Montana v. United States*, 440 U.S. 147, 153–54 (1979).  Accordingly, "[p]rinciples of res judicata prevent relitigation not only on the grounds or theories

actually advanced, but also on those which could have been advanced in the prior litigation." *Mervin v. F.T.C.*, 591 F.2d 821, 830 (D.C. Cir. 1978).  Claim preclusion may therefore apply to "ground[s] for relief which [the parties] already have had an opportunity to litigate even if they chose not to exploit that opportunity."  *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981).

### D.  Claim-Splitting

To "ensure fairness to litigants and to conserve judicial resources," a plaintiff may not engage in "claim-splitting" by "seek[ing] to maintain two actions on the same subject in the same court, against the same defendant at the same time."  *Clayton v. Dist. of Columbia*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014) (citations and quotation omitted).  This doctrine is similar to claim preclusion, with one key difference: claim-splitting occurs when the first suit would preclude the second suit as a matter of res judicata except that the first suit is not yet final.  *Id.* (citing *Katz v. Gerardi*, 655 F.3d 1212, 1219 (10th Cir. 2011)); *see also Hudson v. Am. Fed'n of Gov't Emps.*, 308 F. Supp. 3d 388, 394 (D.D.C. 2018) (citing *Clayton*, 36 F. Supp. 3d. at 94); 18 Wright & Miller, Fed. Prac. & Proc. § 4406 (3d ed. Aug. 2023 update).  Claim-splitting thus requires prior litigation (1) "involving the same claims or cause of action," (2) "between the same parties or their privies," and (3) before "a court of competent jurisdiction."  *See Smalls*, 471 F.3d at 192.

Although "[o]ur court of appeals has never acknowledged the rule against claim-splitting," this Court and numerous others in this district have applied this discretionary doctrine.  *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 19 (D.D.C. 2019) (Lamberth, J.) (collecting cases).  Dismissal for claim-splitting "is not a jurisdictional matter but rather a prudential 'matter of docket management' allowing districts courts to 'dispense with duplicative litigation.'"  *Id.* (quoting 18 Wright & Miller, Fed. Prac. & Proc. § 4406 (3d ed. 2019)).  So, if the lack of final judgment

prevents a court from dismissing a case based on claim preclusion, the court may potentially still consider dismissing it for claim-splitting.

## III.   DISCUSSION

As a threshold matter, plaintiffs assert concrete injuries-in-fact that give them standing to bring this case.  Further, their claims are not barred by res judicata, because *Steele I* has not yet come to final judgment.  Nonetheless, the Court will dismiss plaintiffs' case for violating the rule against claim-splitting.

### A.  Plaintiffs Have Standing

The plaintiffs have adequately alleged Article III standing to challenge the IRS's PTIN renewal requirement and Form W-12 information requests.  The Court rejects the government's argument that plaintiffs lack a cognizable injury-in-fact.

The government suggests in a footnote that plaintiffs lack standing, because their "wasted personal time alone is not an injury in fact."  MTD 6 n.5.  Plaintiffs do allege that the questions put to them when renewing their PTINs waste an hour or so each year.  *See* Am. Compl. ¶ 64.  But they also allege that some of the questions are "invasive and unnecessary." *Id.* ¶ 62.  And plaintiffs point out that the PTIN renewal requirement leads to preparers paying annual fees.  *See* Opp'n 14; *see also Montrois*, 916 F.3d at 1062–66.

Although the government apparently disputes the standing of plaintiffs to assert either of their challenges, "standing is not dispensed in gross," and a court must consider plaintiffs' standing for each claim.  *See Friends of Animals v. Zinke*, 373 F. Supp. 3d 70, 85 (D.D.C. 2019) (Lamberth, J.) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)), *aff'd sub nom. Friends of Animals v. Bernhardt*, 961 F.3d 1197 (D.C. Cir. 2020).  Clearly, plaintiffs allege that the renewal requirement causes them a concrete injury-in-fact, because it carries with it a fee and "[i]f a defendant has

13

caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

Plaintiffs also suffer a monetary injury-in-fact from answering the questions on Form W-12.  To continue as a tax return preparer, one must renew one's PTIN.  *See* 26 C.F.R. § 1.6109-2(a)(1).  To renew one's PTIN, one must answer the required questions.  Am. Compl. ¶ 57; *see also* 26 C.F.R. § 1.6109-2(e).  Should plaintiffs refuse to answer the questions on Form W-12, they would be unable to continue in their chosen livelihood.  Plaintiffs therefore have a concrete injury-in-fact for their claim concerning Form W-12.

Since each of plaintiffs' injuries-in-fact is obviously caused by the IRS's enforcement of its regulations and redressable by their requested relief of a permanent injunction prohibiting the challenged practices, Am. Compl., Requested Relief ¶¶ 3–4, plaintiffs have standing to bring this case.

### B.  Plaintiffs' Claims Are Not Barred by Claim Preclusion

*Steele I* does not bar plaintiffs' claims as a matter of claim preclusion.  Plaintiffs have conceded that three of the four requirements for claim preclusion are met: *Steele I* involves the same claims or cause of action, is between the same parties or their privies, and is before a court of competent jurisdiction.  However, no final, valid judgment on the merits exists that could bar plaintiffs from raising their claims concerning the PTIN requirement and information requests.

### 1.  Plaintiffs Concede That *Steele I* and *Steele II* Involve the Same Claims or Cause of Action

Both *Steele I* and *Steele II* involve the same claims or cause of action.  Plaintiffs have conceded this element by acknowledging that the two cases involve entirely the same set of facts. What is more, plaintiffs first raised the precise claims of this action in the previous case before making a conscious, strategic decision to drop them.

Plaintiffs have effectively conceded that *Steele I* and *Steele II* share the same nucleus of facts. Plaintiffs urged the Court to deny the government's motion for an extension of time to respond to the complaint in this case because "Defendant is fully knowledgeable about all of the pertinent facts, given its (and its attorneys') involvement in *Steele I*" and so "[t]here is no need to 'get up to speed' on anything." Pls.' Response to Request for Extension 2, ECF No. 8. If, as plaintiffs say, the two cases are factually indistinguishable, they of course share a common nucleus of facts.[1] Since the two suits are factually identical, plaintiffs could have raised the claims of this suit in the first suit—as indeed they did.

That plaintiffs merely invoke claims already brought in the first case is a further reason to find identity between *Steele I* and *Steele* II. In *Steele I*, plaintiffs challenged the IRS's authority to require renewal of PTINs and to ask for allegedly unnecessary information—but then chose not to further pursue those claims. As discussed above, the initial complaint asserted that the IRS could not lawfully require renewal or demand preparers provide information beyond name, Social Security number, and address. *See Steele I* Compl. ¶¶ 98–99. Plaintiffs accordingly sought relief addressing these issues. *Id.* ¶ 111; *id.*, Requested Relief, Counts 2, 12. But plaintiffs then amended their complaint to drop these allegations and requests for relief. *See Steele I* 1st Amend. Compl. Why the complaint was amended is no mystery. Mr. Buckley, who included these matters in the original complaint, "candidly admits" that "the choice to omit that claim from the amended complaint was an intentional decision made by Class Counsel over his objection." *Steele*, 2020

---

[1] Plaintiffs read the Supreme Court's decision in *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016) to mean that challenges to distinct regulatory provisions should be considered separate claims for purposes of claim preclusion, regardless of whether they share a common factual nucleus. *See* Opp'n 20–22. They therefore argue that they can challenge the PTIN renewal requirement and Form W-12 questions despite having previously challenged the PTIN issuance requirement and PTIN fees. *See id.* 21. But it is far from clear that *Hellerstedt* sweeps quite as broadly as plaintiffs say. *See* 18 Wright & Miller, Fed. Prac. & Proc. § 4408 (3d ed. Apr. 2023 update) ("It remains to be seen how far this decision will be generalized."). And in any event, even if plaintiffs are correct about *Hellerstedt*, there would certainly be identity of cause of action between *Steele I* and *Steele II* because in the first suit plaintiffs raised the precise claims brought now in the later case.

WL 7123100, at *6; *see also* Opp'n 11 ("[T]he undersigned fought hard in 2015 for the 2015 amended complaint to include the comprehensive relief provisions of the original (2014) complaint. Over my significant objections . . . co-counsel took out the relief prayer for PTIN renewals to cease."); Reply in Support of Mot. of Allen Buckley LLC to Be Named Sole Lead Class Counsel 9–10 (detailing Mr. Buckley's criticism of Motley Rice LLC for not accepting his view that plaintiffs should seek to limit the power of the IRS to require renewal of PTINs and to request more information than necessary).

Mr. Buckley first attempted to resurrect these claims in *Steele I* by filing motions without authorization from class counsel, but the Court rejected his gambit in its December 2020 ruling. *See Steele*, 2020 WL 7123100.  Thus, the *Steele I* Second Amended Complaint—the operative complaint in that case—does not include those issues.  *See Steele I* 2d Amend. Compl.  That is why the Court later rejected plaintiffs' attempt to use their motion for summary judgment to reintroduce their claim about the IRS asking for unnecessary information.  *Steele*, 657 F. Supp. 3d at 48.

Frustrated in his efforts to reinsert these matters into the initial suit, Mr. Buckley decided to do so by launching a new civil action.  Mr. Buckley frankly admits that the purpose of this action is to resurrect matters previously dispatched by class counsel and interred by the Court.  He has stated that "[i]f the court would have considered the matter" of the IRS's authority to request allegedly unnecessary information on PTIN applications in its summary judgment opinion, "this action would not have been filed."  Opp'n 19 n.15.

Bearing in mind this procedural history, *Steele I* and *Steele II* must involve the same claims because plaintiffs in both cases could have asserted—and indeed did assert—the same allegations about PTIN renewal and unnecessary requests for information.  "Claim preclusion bars a party

from re-litigating a claim that," as in this case, "was or should have been asserted in a prior action." *Hurd v. District of Columbia*, 864 F.3d 671, 679 (D.C. Cir. 2017). The identity of claims element does not require "literally identical claims," *Capitol Hill Grp.*, 574 F. Supp. 2d at 149, but surely this element is satisfied when the claims *are* literally identical.

The requirement of identity of claim or cause of action is therefore met.

### 2. Plaintiffs Concede That *Steele I* and *Steele II* Are Between the Same Parties or Their Privies

Plaintiffs concede, correctly, that the cases are between the same parties or their privies.

Plaintiffs acknowledge that "[t]he Steele Class Action members could be privies to Plaintiffs here." Opp'n 18; *see also id.* 23 (stating that the parties in the two cases are "not the same parties, but likely the same privies"). Mr. Steele, of course, gives his name to each case. And the parties agree that both Mr. Steele and his co-plaintiff Ms. Comer are members of the *Steele I* class. MTD 12; Opp'n 18. This membership suffices for privity because "[r]epresentative suits with preclusive effect on nonparties include properly conducted class actions." *See Taylor v. Sturgell*, 553 U.S. 880, 894–95 (2008) (citing *Martin v. Wilks*, 490 U.S. 755, 762 n.2 (1989)); *see also Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.").

The identity-of-parties requirement is therefore met.

### 3. Plaintiffs Concede That *Steele I* Is Before a Court of Competent Jurisdiction

Plaintiffs concede that the court in *Steele I* is a court of competent jurisdiction. Opp'n 22. As well they should, since the Court has already found it has jurisdiction over *Steele I*. *See Steele v. United States*, 200 F. Supp. 3d 217, 219 (D.D.C. 2016). This requirement is clearly met.

### 4. No Final, Valid Judgment on the Merits Precludes the Claims Here

Although the other three requirements of claim preclusion have been met, one element is missing. Claim preclusion is unavailable because there has not been a valid, final judgment on the merits in *Steele I* that can preclude plaintiffs from bringing this case.

Litigation in *Steele I* remains ongoing. When the Court decided the cross-motions for summary judgment, it did not enter final judgment but instead remanded to the IRS to determine an appropriate refund for the class. *Steele*, 657 F. Supp. 3d at 49–50. Although the government recently gave notice of the IRS's estimated refund, the plaintiffs intend to challenge that estimate and the Court has yet to enter final judgment. *See* Mar. 4, 2024 Order.

Nonetheless, the government argues that plaintiffs' claims are barred by a valid, final judgment in *Steele I*. Its theory is that this Court held that the IRS could require the use and renewal of PTINs, and that ruling was affirmed on appeal by *Montrois*. MTD 12–13; Reply 8–9. In the government's view, this alleged affirmance preserved that aspect of the Court's final judgment for res judicata purposes even though the Circuit vacated the Court's judgment and remanded for further proceedings. MTD 13 (citing *Kissi v. EMC Mortg. Corp.*, 887 F. Supp. 2d 1, 8 (D.D.C. 2012)). That is so because "[w]hen a court's 'decision has been affirmed in part and reversed and remanded in part, that portion of the judgment that has been affirmed is considered final and binding.'" *Id.* (quoting *FDIC v. Braemoor Assocs.*, No. 76-3295, 1985 WL 1919, at *6 n.3 (N.D. Ill. June 28, 1985) and citing *Mazaleski v. Harris*, 481 F. Supp. 696, 698 (D.D.C. 1979), *aff'd sub nom. Mazaleski v. Schweiker*, 670 F.2d 1235 (D.C. Cir. 1981)). Here, the government argues, the Court's ruling that the IRS could require issuance and renewal of PTINs deserves claim preclusive effect because the *Montrois* court affirmed this holding even as it reversed on other matters. *Id.* 13–14. Although the plaintiffs accept the government's statement of the law, they

argue it does not apply because in truth this Court never ruled on the renewal requirement issue. *See* Opp'n 20.

The Court agrees with plaintiffs. Even if the government is right that any matter held by this Court and affirmed in *Montrois* is entitled to preclusive effect,[2] preclusive effect would only attach to the matter of whether the IRS may require PTINs to be issued—not whether it can require them to be *renewed*.

The government's assertion that "there has already been a judgment on whether the IRS can require the renewal of PTINs," Reply 8, is incorrect and relies on a misunderstanding of *Steele I* and a misreading of *Montrois*. The *Montrois* opinion states that "as the district court held, the IRS's requirement that preparers obtain and renew a PTIN survives" the Circuit's *Loving* decision. *Montrois*, 916 F.3d at 1068 (citing *Steele*, 260 F. Supp. 3d at 62–63).

But that language does not mean that *Montrois* held that the IRS may require preparers to renew their PTINs. The most natural reading of the Circuit's statement is that the renewal requirement "survives" *Loving* because *Loving* did not itself invalidate the PTIN issuance and renewal requirements. *See Steele*, 657 F. Supp. 3d at 29 ("*Loving* thus invalidated many of the RPO activities that the PTIN fees funded. However, it left undisturbed the regulations requiring all return preparers to obtain and renew PTINs and to pay a fee for doing so."). Moreover,

---

[2] The D.C. Circuit's comments on the preclusive effect of a judgment affirmed in part and reversed in part seem to point in opposite directions. *Compare U.S. Industries, Inc. v. Blake Const. Co., Inc.*, 765 F.2d 195, 199 n.9 (D.C. Cir. 1985) (suggesting that the part of a prior judgment affirmed on appeal is final for claim preclusion purposes), *with Nat'l Ass'n of Broadcasters v. F.C.C.*, 554 F.2d 1118, 1124 n.17 (D.C. Cir. 1976) ("A judgment may . . . be reversed by an appellate court on a single ground, and remanded with other determinations of the trial court left intact. In such a case, the unreversed determinations of the trial court are generally adhered to on remand; but this is an application of the doctrine of law of the case, rather than res judicata or collateral estoppel.") (alteration in original) (citation omitted); *see also Mazaleski*, 481 F. Supp. at 698 ("[I]f the original judgment has been set aside or reversed, and further proceedings are directed, such as a new trial, rules of Res judicata are not applicable until new judgment is rendered.") (citation and internal quotation omitted).

*Montrois* cannot be read as affirming a ruling upholding PTIN renewal because the underlying decision from this Court did not actually decide that issue.

This Court ruled that the IRS has authority to require preparers to *obtain* PTINs, but it did not reach whether the IRS may require them to *renew* PTINs. Determining the preclusive effect, if any, of a partially reversed judgment requires a close assessment of the content of the underlying judgment. The opinion reviewed on appeal held that the IRS could require preparers to "obtain" and "use" PTINs, but did not address the IRS's authority to force preparers to renew already-issued PTINs. *See Steele*, 260 F. Supp. 3d at 62–63. Nor does the Final Judgment and Permanent Injunction speak to whether the IRS may require PTIN renewals. *See Final J. & Permanent Inj.* In fact, the Court could not have reached this issue because the then-operative First Amended Complaint did not address the IRS's authority to require renewal. *See Steele I* 1st Amend. Compl. ¶¶ 39–45; *see also Steele*, 2020 WL 7123100, at *4–6 (denying leave to amend the First Amended Complaint "to reintroduce a challenge to the PTIN renewal requirement"). Since the Court did not pass upon the PTIN renewal requirement, *Montrois* cannot be read to affirm any such judgment. This Court has already implicitly recognized that *Montrois* effectively affirmed the IRS's authority to require PTINs. *See Steele*, 657 F. Supp. 3d at 33 (describing the procedural history of *Steele I* and explaining that "[b]ecause only the government appealed, the Circuit's decision [in *Montrois*] did not disturb this Court's holding that the IRS was authorized to require preparers to obtain PTINs"). Therefore, far from "already [having] ruled on the same claims in this suit," Reply 8, the *Montrois* court affirmed only the Court's judgment that IRS may require preparers to obtain PTINs.

Even if the government is right on the law, the only aspect of the Court's judgment with preclusive effect is its decision upholding the IRS's authority to require preparers to obtain PTINs.

But that by itself cannot preclude plaintiffs from bringing this case. To treat the judgment as precluding not just the specific ground affirmed on appeal but also other grounds advanced in the same litigation would be to act as if the Circuit had affirmed the judgment in whole rather than in part. It would be strange if an affirmance on one aspect of a valid final judgment should bar the claims of this suit when the Circuit vacated the Court's ruling on the aspect of the judgment more closely related to these claims, namely whether the IRS could charge fees for PTIN renewals,

Since no final judgment has been entered in *Steele I* that could bar adjudication of *Steele II*, the Court will decline to dismiss plaintiffs' case on the basis of claim preclusion.

### C. Plaintiffs' Suit Violates the Rule Against Claim-Splitting

The Court will dismiss plaintiffs' case for violating the rule against claim-splitting. As previously discussed, and as plaintiffs concede, every element of claim preclusion other than finality has been met. *Steele II* therefore violates the rule against claim splitting, meaning the Court has discretion to dismiss it. The Court will exercise its discretion to do so because of the unique facts of this case: The class-counsel-in-exile from the first case brought a new suit to revive claims that plaintiffs initially raised in the first case but then dropped over his objections, and that the Court did not permit him to reinsert into the prior case.

### 1. The Court Has Discretion to Dismiss Plaintiffs' Case for Claim-Splitting

The Court has discretion to dismiss plaintiffs' case for claim-splitting. As established above, *Steele I* "involve[es] the same claims or cause of action," is "between the same parties or their privies," and is before "a court of competent jurisdiction." *See Smalls*, 471 F.3d at 192. In

addition, the concerns that might make a court hesitate before applying claim-splitting doctrine are absent here.

To be sure, "other courts in this district have declined to dismiss a second action under claim-splitting where the court previously precluded the plaintiff from adding the claims and defendants to their prior suit." *Smith*, 387 F. Supp. 3d at 19 (citing *Coulibaly v. Pompeo*, 318 F. Supp. 3d 176, 181–82 (D.D.C. 2018); *but see id.* at 19 n.9 ("Courts have admittedly gone both ways on this question." (citing *Dorsey v. Jacobson Holman PLLC*, 764 F. Supp. 2d 209, 213 (D.D.C. 2011)); *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008) ("Often, the rule against claim splitting applies to prevent a plaintiff from filing a new lawsuit after the court in an earlier action has denied the plaintiff's request for leave to amend to add the claims later asserted in the second lawsuit."). But even if a general rule against applying claim-splitting in such a context holds, it would not apply here. Blocking a plaintiff from advancing claims first by denying leave to amend their complaint, and then by dismissing their separate case could, depending on the circumstances, smack of unfairness. But there is no such unfairness when, as in this case, the plaintiffs brought these claims in the initial suit, made a strategic choice to drop them, and now seek a second chance to litigate them. Plaintiffs had their day in court, and now seek another.

Next, this Court has expressed uncertainty about how the rule against claim-splitting should apply in the context of class actions, but the considerations that may warrant concern are absent here. *See Smith*, 387 F. Supp. 3d at 19 ("This rule does not easily scale to the class action setting."); *compare Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 597 (N.D. Ill. 2009) ("[T]he doctrine of claim splitting generally does not apply to class actions."), *with Brewer v. Lynch*, No. 08-cv-1747 (BJR), 2015 WL 13604257, at *10 (D.D.C. Sept. 30, 2015) (noting that claim splitting

"is generally prohibited by the doctrine of res judicata, particularly in class actions.").   But the concern about applying claim-splitting in the class action context is rooted in the fact that "a class action can be thought of as an action in a court of limited jurisdiction in which only certain claims and certain forms of relief are available."  *See* 18 Moore's Federal Practice § 131.40 (3d ed. 2024) (citing Restatement (Second) of Judgments § 26(1)(c) (Am. L. Inst. 1982)).  But the Court is not confronted with a situation in which "the plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because" it was a class action and now "desires in the second action to rely on that theory or to seek that remedy or form of relief." *See* Restatement (Second) of Judgments § 26(1)(c).  Nothing about *Steele I*'s class action status prevented plaintiffs from bringing their PTIN renewal and Form W-12 claims in that case, and indeed plaintiffs initially *did* bring those claims.  Therefore, the fact that *Steele I* is a class action does not militate against applying the claim-splitting rule in this case.

### 2.  The Court Will Dismiss Plaintiffs' Case for Claim-Splitting

The Court thus has discretion to dismiss plaintiffs' case for claim-splitting, and the unique facts of this case justify doing so.  Permitting a "class counsel in exile" to unleash parallel, duplicative litigation against a defendant is not in the interest of judicial economy, fairness to defendants, or sound judicial policy.

The Court is not blind to what is going on here.  Mr. Buckley has often vented his exasperation with and resentment of class counsel's exercise of its authority.  *See, e.g*., Reply in Support of Mot. of Allen Buckley LLC to Be Named Sole Lead Class Counsel 2–10 (airing various grievances against individual Motley Rice LLC attorneys); *id.* at 12 (accusing Motley Rice LLC of lacking "the passion and abilities I possess");  Reply to Gov.'s Opp'n to Mot. for Prelim. Inj. 2 n.1, ECF No. 134, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. Sept. 30, 2020)

("[T]reatment of me as something other than co-counsel by both my co-counsel and the Defendant's counsel is both difficult to stomach and potentially unethical"); Reply to Class Counsel's Response to Mot. for Prelim. Inj. 3 n.1, ECF No. 131, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. Sept. 24, 2020) (arguing that that Motley Rice LLC's omission of the PTIN renewal issue from the *Steele I* First Amended Complaint "was another example of how the class was potentially hurt by rejection of a reasonable request I made"); *id.* at 2 (accusing Motley Rice LLC of opposing his unauthorized motion for a preliminary injunction because it seeks to maximize its own attorney fees at the expense of the best interests of the class).

Mr. Buckley has not come to terms with the Court's decision to vest the authority of class counsel in Motley Rice LLC and not him. *See, e.g.*, Reply to Class Counsel's Response to Mot. for Prelim. Inj. 3 ("A person who hires a lawyer to do a job should not have that lawyer's power to represent them taken away, and instead be forced to be served by another lawyer with whom she or he has no contract and who does not do what the client wants or what is in the client's best interest."); Mot. to File Pls.' Suppl. Opp'n Br. 1, ECF No. 188, *Steele v. United States*, No. 1:14-cv-1523 (RCL) (D.D.C. May 12, 2022) ("I hired Motley Rice LLC to help me with the case, not to take control and run the case. Never did I turn over control to it.").

Mr. Buckley's evident purpose in launching this action is to wrest control of litigation from class counsel in *Steele I* and do an end-run around the Court's orders in that case. Plaintiffs concede that "[i]f the court would have considered the matter" of the IRS's authority to request allegedly unnecessary information on PTIN applications in its summary judgment opinion even though the Court had already excluded it from the Second Amended Complaint, "this action would not have been filed." Opp'n 19 n.15. As far back as 2020, in the midst of his failed hostile takeover of *Steele I*, Mr. Buckley warned that if the Court did not put him in charge of the case and permit

him to amend the complaint to add the issues of PTIN renewal and requests for allegedly unnecessary information, "the class will have been shortchanged, as bringing another lawsuit to cover such matters would be painful (and illogical, when the matters should be handled here)." *See* Reply in Support of Mot. of Allen Buckley LLC to Be Named Sole Lead Class Counsel 10.

Dismissing this case for claim-splitting is appropriate in light of the important interests served by preclusion doctrines, including "protection of litigants from the vexation and expense of repetitious litigation, protection of the courts from the burden of unnecessary litigation, promotion of respect for the judicial process and confidence in the conclusiveness of judicial decision-making, avoidance of disconcertingly inconsistent results, and securing the peace and repose of society." *Clark-Cowlitz Joint Operating Agency v. FERC*, 775 F.2d 366, 373 (D.C. Cir. 1985), *reh'g granted, judgment vacated on other grounds*, 787 F.2d 674 (D.C. Cir. 1986).

Here, dismissing the case for claim-splitting would not be unfair to plaintiffs, because they already had a full and fair opportunity to litigate these precise issues in *Steele I*, but decided not to do so. Meanwhile, dismissing this action would spare the defendant the "vexation and expense of repetitious litigation," *id.*, particularly the need to fight a war on two fronts, defending itself in duplicative suits helmed by rival attorneys with clashing aims and approaches.

Dismissing plaintiffs' splinter suit would also promote judicial economy by sparing the Court the need to adjudicate complicated issues that plaintiffs chose to stop pressing in the prior suit, and by discouraging future plaintiffs from splitting their claims. Mr. Buckley himself previously told the Court that a second suit on the issues of PTIN renewal and requests for allegedly unnecessary information would make no sense. *See* Reply in Support of Mot. of Allen Buckley LLC to Be Named Sole Lead Class Counsel 10 ("[B]ringing another lawsuit to cover such matters would be painful (and illogical, when the matters should be handled here)." The Court

agrees with Mr. Buckley that adjudicating this case would be "painful" and "illogical" because the matters should have been handled, if at all, in the initial case.

Relatedly, dismissing this case would promote "respect for the judicial process and confidence in the conclusiveness of judicial decision-making."  *Clark-Cowlitz Joint Operating Agency*, 775 F.2d at 373.  "Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm."  Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2(a)(1), 119 Stat. 4, 4. Permitting splinter suits by disgruntled plaintiffs' attorneys would impede the ability of the underlying class action to serve the purposes envisaged by Congress, including by potentially undermining the authority and efficacy of class counsel and complicating the resolution of the class action.

For these reasons, the Court will exercise its discretion to dismiss plaintiffs' case for violating the rule against claim-splitting.

**D.  The Court Will Grant Plaintiffs' Motion to File a Sur-Reply Brief**

In the interest of fairness, the Court will permit plaintiffs' sur-reply to be filed.  Although sur-replies are generally disfavored, "[t]he decision to grant or deny leave is 'committed to the sound discretion of the Court.'"  *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 85 (D.D.C. 2014) (Lamberth, J.) (quoting *Lu v. Lezell*, 45 F. Supp. 3d 86, 91 (D.D.C. 2014)).  Here, denying plaintiffs leave to file their sur-reply would be unfair to Mr. Buckley, because the government's reply brief accused Mr. Buckley of misrepresenting facts.  *See* Reply 1, 10.  Mr. Buckley wishes to use a sur-reply to challenge this characterization.  *See* Pls.' Sur-Reply 2, ECF No. 20-1 ("In legal vernacular, Defendant claims I lied . . . .   I value my reputation, and I've always considered myself to be

honest."). It would be unfair to deny Mr. Buckley the chance to respond to the government's accusation. The Court will therefore grant plaintiffs' motion to file a sur-reply.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that plaintiffs violated the rule against claim-splitting. The Court will accordingly exercise its discretion to **GRANT** the government's motion to dismiss and will **DISMISS** the amended complaint. The Court will also **GRANT** plaintiffs' motion to file a sur-reply.

A separate Order consistent with this Memorandum Opinion shall issue.

Date: _____3/14/24_____

Royce C. Lamberth
United States District Judge